## COBB v. CAPITAL TRANSIT CO.
### No. 8768.

United States Court of Appeals
District of Columbia.

Argued Dec. 13, 1944.

Decided Feb. 5, 1945.

Mr. Burton A. McGann, of Washington, D. C., for appellant.

Mr. Howard Boyd, of Washington, D. C., with whom Mr. Edward Bennett Williams, of Washington, D. C., was on the brief, for appellee. Mr. Edmund L. Jones, of Washington, D. C., also entered an appearance for appellee.

Before GRONER, Chief Justice and MILLER and EDGERTON, Associate Justices.

**GRONER, C. J.**

The single question in this case is whether the refusal of the trial court to grant plaintiff's instruction on the last clear chance doctrine was error. The suit was brought to recover damages for injuries sustained when the plaintiff was struck by defendant's street car at Ninth Street and Pennsylvania Avenue, Northwest, in the City of Washington.

At the point in question defendant's car tracks run east and west on Pennsylvania Avenue. The westbound track is on the north side of the middle of the street and the eastbound track, on the south side. The rails are a little more than four feet apart and the fairway between the tracks is approximately five feet (the exact measurements do not appear in the record). There is a loading and discharging platform running parallel with each set of tracks, and the platform for the westbound cars runs west from near the intersection of Ninth and Pennsylvania Avenue a distance of perhaps two hundred and fifty feet. The platform for the eastbound tracks is shorter by about fifty feet. At a point some distance from the accident plaintiff had boarded the westbound car and when it stopped at the part of the platform nearest Tenth Street, he got off the car—he did not remember whether he alighted at the middle or the front doorway, but he does remember stepping off "right at the end of the platform, the west end"—intending to cross to the south sidewalk to take a bus at the southeast corner of Ninth and Pennsylvania Avenue. His account of the accident is that before stepping off the westbound platform he looked to the east and then to the west and, seeing no car approaching, he stepped down from the platform onto the westbound track, looked to the east and then to the west and, seeing no car coming, he proceeded to cross the westbound track until within three or four steps of the eastbound rail, when he looked again to the west a distance of approximately one hundred and fifty feet and thought he could cross safely. At no time did he see the street car that struck him. He had previously testified that before he left the platform the car from which he had alighted had started and had "gone way up the line." None of plaintiff's other witnesses saw the accident or observed his movements until after he was struck. But the motorman and another witness testified he stepped from immediately behind

the westbound car into the eastbound car. Like testimony was given by a passenger on a bus which had stopped at the curb on Pennsylvania Avenue, some fifty feet west of Ninth Street.

■ The applicability of plaintiff's own testimony to the last clear chance doctrine grows out of his statement that the car from which he had alighted had left the platform and gone some distance to the west when he first stepped from the platform on to the track. If this is true, he would have been within the range of vision of the motorman of the approaching eastbound car for at least the length of time required to walk across the westbound track and a part of the fairway between the tracks to the point where the car collided with him. But on the other hand, if plaintiff's ·description of his own movements is true, and if, as he says he did, he looked two or three times to the west, as he proceeded, he could not have failed to see the street car approaching. Accordingly his testimony that he looked and yet failed to see the car at any time up to the moment of impact is obviously untrue in the one respect or the other, and is clearly insufficient to support an instruction of last clear chance. If this were all, the answer to the question would be simple, but much more than this appears from defendant's evidence. The motorman testified that when he first saw plaintiff he was at the middle of the westbound track, looking toward the east, over his left shoulder. In this position he was approximately seven feet away from the northern rail of the eastbound track and about six feet from the point of impact. If, as he says, he was walking a mile and a half an hour, he would have required two or three seconds to reach the point of collision, and if, as indicated by four of the defense witnesses, the street car was approaching at the rate of fifteen miles an hour (or twenty-two feet per second), it is obvious that instead of the car being then only twelve feet away, as the motorman testified, it must have been nearer fifty feet away; and the uncontradicted expert evidence is that at the rate of fifteen miles an hour the car could have been stopped in approximately twenty-five feet. It is quite true the motorman also testified that the reason he did not see plaintiff sooner was that plaintiff was behind the westbound car and it was only when his car reached the point opposite the westbound car that he could see plaintiff stepping out from behind it and on to the eastbound track. But at least two of defendant's other witnesses testified that the westbound car had moved ahead before plaintiff stepped down from the platform on the tracks, and one witness, whose vision would otherwise have been obstructed by the westbound car, testified he could see the approaching eastbound car for several car lengths just before the accident. If this is true, the motorman of the approaching car, in the exercise of due care on his part, might also have seen plaintiff in a position of danger in time to stop his car and avoid the collision. It is also true that there was considerable other evidence that the plaintiff stepped from immediately behind the westbound car into the path of the eastbound car, but on the whole we think there was enough to the contrary to submit the doctrine of the last clear chance to the jury, and the failure of the court to do so was error for which a new trial in this case must be awarded.

■■ It is further argued that although the facts may have justified such an instruction, the particular instruction framed by plaintiff's counsel was fatally defective, in that, *inter alia,* it stated that the doctrine is applicable not only where the motorman *had* an opportunity but where he "*should* have had an opportunity to save the plaintiff from the consequences of his negligence."[1] We agree that the quoted words were technically inaccurate, but the instruction, considered as a whole, was so phrased as not to confuse the jury and, moreover, if the trial judge had been minded to give any instruction on the subject, we have no doubt the objectionable part would have been omitted when his attention was drawn to it.

Reversed and remanded.

---

[1] Kansas City Southern R. v. Ellzey, 275 U.S. 236, 241, 48 S.Ct. 80, 81, 72 L.Ed. 259. The doctrine of last clear chance "amounts to no more than this, that a negligent defendant will be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it only through carelessness, had in fact a later opportunity than the plaintiff to avert an accident."